Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6098 | **DATE** | 3/27/2003 |
| **CASE TITLE** | US ex rel. Sandra Johnson vs. MacNeal Health Services Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 4/15/2003 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 28-1) for summary judgment is denied. Defendant's motion (Doc 37-1) to strike is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 27 2003 | |
| | Notified counsel by telephone. | | date docketed | 40 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAR 27 PM 2:5 | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
MAR 27 2003

THE UNITED STATES OF AMERICA ex rel. )
SANDRA JOHNSON, )
 )
               Plaintiff, )
 )
     vs. )     99 C 6098
 )
MACNEAL HEALTH SERVICES )
CORPORATION d/b/a GENESIS CLINICAL )
LABORATORY, )
 )
               Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the court on Defendant MacNeal Health Services Corporation d/b/a Genesis Clinical Laboratory's motion for summary judgment and motion to strike. For the reasons stated below, we deny the motion for summary judgment and grant the motion to strike in part and deny it in part.

### BACKGROUND

Genesis Clinical Laboratory ("Genesis") is a wholly-owned subsidiary of MacNeal Health Services Corporation ("MacNeal"). Genesis performs laboratory services for MacNeal Memorial Hospital and for physicians affiliated with the hospital.



Plaintiff Sandra Johnson ("Johnson") began serving as Director of Operations for Genesis in March 1994. Johnson claims that she discovered that billing clerks at Genesis were improperly entering diagnosis codes on their own and that she informed management repeatedly that the practice resulted in violations of Medicare regulations. According to Johnson, in September 1997, Dr. Jorge Cavero complained to her about the Genesis requisition forms because it forced physicians to illegally bundle profiles, thus forcing physicians to order laboratory testing that was not medically necessary. Johnson claims that, after investigating further, she told Genesis management that the requisition forms did not comply with Medicare rules and procedures. Johnson was fired shortly after she allegedly brought the Medicare non-compliance to the attention of Genesis management. Genesis claims that Johnson was fired because of deficiencies in her work performance. Genesis also claims that Johnson entered into a contract on behalf of Genesis with a company that had financial connections with Johnson's husband. In November 1997, after Johnson's termination, MacNeal's Board of Directors hired Ms. Lale White ("White") to perform an audit of Genesis billing practices and determine whether the laboratory billing was being done correctly. Johnson brought this suit under the *qui tam* provisions of the False Claims Act, ("FCA"), 31 U.S.C. § 3729 *et seq.*

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia*

*v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I. Submission of False Medicare Claims

Johnson claims that the 1997 Genesis requisition forms improperly bundled tests together thus encouraging physicians to order tests that were not medically necessary. Johnson also claims that billing clerks at Genesis improperly filled in diagnosis codes so that Genesis could bill Medicare quicker. According to Johnson, these Genesis practices caused false Medicare claims to be filed with the government. A party is liable under the FCA if that party "knowingly" presents to the United States Government "a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). A person submits a false claim "knowingly" if the person "has actual knowledge of the information[,] . . . acts in deliberate ignorance of the truth or falsity of the information[,] or . . . acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). There is no liability under § 3729(a) for mere "[i]nnocent mistakes or negligence." *Hindo v. University of Health Scis./The Chicago Med. Sch.*, 65 F.3d 608, 613 (7th Cir. 1995).

Genesis argues that the 1997 requisition form complied with Medicare regulations. According to Genesis, the forms allocated space where physicians could write in the name of tests and thus order individual tests rather than bundles of tests. Genesis also points out that White testified that the requisition form complied with Medicare regulations. The essence of Genesis' argument on this and all other issues is that we should believe Genesis and not Johnson. However, a summary judgment motion is not an abbreviated trial. *Anderson*, 477 U.S. at 255. We must be mindful not to tread into the domain of the trier of fact and can only find in Genesis' favor if a reasonable jury could not find for Johnson. *Id.* at 248. Johnson claims that the requisition forms were formatted in a manner that encouraged physicians to order bundles of tests and thus include tests that were medically unnecessary. Johnson also claims that the Genesis Comptroller acknowledged in 1997 that Genesis had not complied with Medicare regulations since 1994. There is a genuine issue of material fact regarding whether or not the 1997 Genesis requisition form violated Medicare regulations.

Johnson also claims that billing clerks at Genesis filled in diagnosis codes in order to facilitate Medicare billing. Medicare guidelines require that a valid diagnosis be entered for every test billed to Medicare and only the physician can fill in the diagnosis. According to Johnson, if the billing clerks at Genesis could not get a

diagnosis code from a physician, then they would fill in the code themselves. Johnson estimated that approximately 10,000 false claims were filed by Genesis between 1994 and 1997. Genesis asserts that Johnson's claim that Genesis filed over 10,000 false claims is mere speculation. Genesis also insists that Johnson's job responsibilities did not include overseeing Medicare billing and Genesis points out that Johnson has never actually seen a false claim submitted by Genesis.

Whether or not Genesis filed 10,000 false claims or any false claims is not particularly relevant at this juncture. We are concerned with whether Genesis is liable under the FCA. Genesis repeatedly points out that Johnson never saw a bill that was sent to Medicare. There is no legal requirement that Johnson must have physically held a bill submitted by Genesis and scrutinized its information for Medicare compliance. Nothing prohibits the drawing of reasonable inferences from circumstantial evidence. Whether or not that circumstantial evidence is sufficient to establish Genesis' liability is a determination for the trier of fact.

Johnson claims that she saw billing clerks at their keyboard entering diagnosis codes on their own when the physicians could not provide the codes. Specifically she remembers April Pilarczyk entering diagnosis codes when she could not get them from physicians. Johnson claims that she repeatedly informed management that the billing procedures at Genesis violated Medicare regulations.

Johnson claims that in her job at Genesis she interacted directly with the billing clerks. She also claims that one of her duties at Genesis was to make sure that Genesis complied with Medicare regulations and to report any violations to the President. Johnson asserts that she acquired additional knowledge regarding Genesis billing procedures because the departments under her supervision included customer service and specimen processing. Genesis again asks us not to believe Johnson and accuses her of fabricating the whole story regarding the diagnosis codes. We find that there is a genuine issue of fact regarding whether Genesis billing clerks were entering diagnosis codes on their own when they could not get a diagnosis from the physicians. Johnson was the Director of Operations for Genesis. Her job involved areas that touched on Medicare billing and she interacted directly with billing clerks at Genesis. She claims that one of her duties at Genesis was to check for Medicare fraud and abuses. We cannot say that no reasonable jury could find for Johnson on the issue of whether diagnosis codes were being improperly entered at Genesis.

II. Retaliation Claim

Johnson claims that Genesis terminated her employment because she spoke up about the Medicare billing violations. In order to encourage employees to report FCA violations, Congress included in the FCA a provision that protects "whistle-blowers" who bring *qui tam* actions under the FCA. *Neal v. Honeywell, Inc.*, 33 F.3d 860, 863

(7th Cir. 1994). An employee "who is discharged . . . because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the FCA,] including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under [the FCA] shall be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730(h). In order to establish a retaliation claim under the FCA a plaintiff must establish that: 1) she engaged in protected activity, 2) the employer knew of the protected activity, and 3) the employer took the alleged action against the employee because of the protected activity. *Khan v. Chicago Hous. Auth.*, 2002 WL 849801, *3 (N.D. Ill. 2002).

Johnson claims that she repeatedly told Genesis management that Genesis was not in compliance with Medicare regulations. According to Johnson, Dr. Jorge Cavero complained to her about the bundling of tests on the requisition forms and told Johnson that the forms were illegal. Johnson claims that she informed Genesis' president Gene Heidt ("Heidt") of Dr. Jorge's complaint and requested a meeting with Heidt to discuss the requisition forms. Johnson also claims that she discussed the illegal bundling issue with the Medical Director of Genesis. In addition, Johnson claims that she raised the issue of the illegality of the requisition forms at management meetings starting in January 1994, that she indicated at the management meetings that the requisition forms needed to be changed to comply with Medicare regulations, and that at an August 1997

meeting the Genesis Comptroller admitted that Genesis had been non-compliant since 1994 and that there had been millions of dollars in over billing. Johnson also claims that the former president of Genesis told her that he was aware of her belief that the requisition forms were improper and that he knew that there could be a criminal prosecution if fraud was discovered. In addition, according to Johnson, in September after Johnson allegedly began speaking up about the Medicare compliance issues, Heidt told her to "stay out" of Medicare compliance issues and told her that Genesis "did not like" people who brought up such problems. Also, at a management meeting when Johnson raised the Medicare compliance issue the president of MacNeal allegedly told her to "leave it alone."

Genesis again asks us not to believe Johnson and accuses her of fabricating all of the alleged conversations when she complained about Medicare compliance. Genesis has submitted an affidavit by Dr. Cavero claiming that he did not complain about illegal bundling to Johnson, and all the other Genesis employees implicated in the alleged conversations at management meetings and elsewhere deny that any such conversations occurred. Genesis argues that we should take the word of the many again the word of the one and argues that the fact that Johnson can find no one to corroborate her allegations shows that she is not telling the truth. The ultimate determination of which scenario is accurate is a matter for the trier of fact.

Genesis also argues that, although Johnson made complaints to Genesis management, the complaints did not constitute protected activity under the FCA because the complaints did not indicate that a government investigation or litigation was a possibility. *See Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) (stating that mere intra-corporate debates about problems with testing are not sufficient to constitute protected conduct unless the suggestions can be viewed as alerting the employer to the possibility of future litigation). Johnson claims that the former Genesis president knew that criminal prosecution was a possibility. She also indicates that she informed management at Genesis that Genesis was not in compliance with Medicare regulations. If, for example, Johnson had merely complained about the inconvenience to the physicians caused by the bundling of tests on the forms and sought to change the forms on that basis then there would not be a protected activity. However, telling Genesis management that Genesis was not complying with Medicare regulations, if believed, is sufficient to put Genesis on notice that litigation might result should that non-compliance be discovered by the government.

Finally, Genesis points out that Johnson filed a discrimination claim with the Illinois Department of Human Rights and did not check the box indicating that her termination was in retaliation for her conduct. Johnson first raised the FCA issues nearly two years after her termination. The fact that Johnson did not mention the

retaliation when filing her discrimination claim does not warrant a granting of summary judgment. It will be considered by the trier of fact when assessing Johnson's credibility.

III. Motion to Strike

Genesis filed a motion to strike Johnson's testimony regarding whether the 1997 Genesis requisition forms complied with the Model Compliance Plan issued by the Office of Inspector General in March 1997. Johnson was the Director of Operations for Genesis. She has a degree in medical technology and thirty years of experience working in laboratories. At Genesis she was assigned the task of publishing the company's Test Reference Manual. In 1992 Johnson was appointed to the Clinical Laboratory Improvement Advisory Committee, a group of twenty-one experts formed to advise Congress concerning laboratory regulations. She served on the committee for four years. Johnson claims that, based on what she learned on the committee, she would inform the Genesis president of changes in Medicare regulations, and federal billing requirements for laboratories such as Genesis. She also claims in her deposition that she worked on a Medicare compliance plan for Genesis and that one of her duties at Genesis was to find out where Medicare fraud and abuse was occurring at Genesis, including areas such as billing procedures, and bring it to the attention of the Genesis

President. The trial is the appropriate place to evaluate the admissibility and believability of opinion and other testimony.

Genesis also seeks to strike the statements made by Johnson that claim that Genesis submitted approximately 10,000 false claims. As indicated above, Johnson has shown that she was in a position to discover false claims. We shall leave the assessment of the admissibility and credibility of the alleged number of violations for trial.

Genesis also claims that Johnson's references to National Health Labs where Heidt worked before coming to Genesis are improper and seeks to strike the statements of additional fact relating to National Health Labs. We agree that the references to the investigation at National Health Labs are not relevant and are prejudicial to Genesis. We are obligated to conduct our own independent evaluation in the matter before us. Therefore we grant the motion to strike the references to National Health Labs. We also grant Genesis' motion to strike Johnson's reference in her statement of additional facts paragraph thirteen where she commented on White's audit and claimed that, out of a sample of 100 claims tested by White, "42 contained misrepresented diagnosis codes."

## CONCLUSION

Based on the foregoing analysis, we deny the motion for summary judgement, deny the motion to strike Johnson's testimony regarding whether the 1997 Genesis requisition forms complied with the Model Compliance Plan, and deny the motion to strike Johnson's allegations concerning the alleged number of false claims submitted by Genesis. We grant the motion to strike paragraph thirteen of Johnson's statement of additional facts and grant the motion to strike the references in the statement of additional facts to National Health Labs.

*[signature]*

Charles P. Kocoras
Chief Judge
United States District Court

Dated: MAR 2 7 2003